## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| MICHELLE GENSMER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION 18-0361-WS-M |
| | ) | |
| CAPITAL ONE N.A., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

This matter comes before the Court on defendant Capital One, N.A.'s Motion to Dismiss (doc. 8). The Motion has been briefed and is now ripe.

**I.      Background.**

Plaintiff, Michelle Gensmer, brought this putative class action against defendant, Capital One N.A., alleging a violation of the Truth-in-Lending Act, 15 U.S.C. §§ 1601 *et seq.* ("TILA"). According to the well-pleaded factual allegations of the Complaint (doc. 1), which are accepted as true on Rule 12(b)(6) review, Gensmer has two Capital One credit card accounts. (Doc. 1, ¶ 8.) At some point, Gensmer opted out of receiving paper account statements from Capital One, in favor of managing her accounts electronically via a mobile application known as the "Capital One Wallet App," which Capital One published, marketed and promoted to its customers. (*Id.*, ¶¶ 7, 9.) By the terms of her agreements with Capital One, Gensmer's monthly credit card payments were due on or before the 25th of each month, failing which Capital One was entitled to assess a late fee. (*Id.* ¶ 10.)

As alleged in the Complaint, Gensmer initiated payments on both Capital One accounts through her bank in August 2017. (*Id.*, ¶ 11.)[1] On or about August 26, 2017, she utilized the

---

[1]      The Complaint does not indicate that Gensmer made the minimum payments on her Capital One account balances by the requisite deadline of August 25, 2017. From the context of the pleading, it appears undisputed that Gensmer's payments were received by Capital One after the August 25 deadline, thereby triggering late fees. Indeed, Gensmer's Complaint objects (Continued)

Wallet App to confirm that her payments had been posted and to review her Capital One account status. (*Id.*)  At that time, Gensmer observed that the Wallet App showed that Capital One had assessed late fees of $25.00 on both accounts on August 24, 2017, one day before her payment due deadline. (*Id.*)  Upon further examination of her Capital One account information in the Wallet App, Gensmer discovered that it contained inaccurate information about transaction dates.  In particular, the Wallet App showed purchases as having occurred one day earlier than the actual transactions. (*Id.*, ¶ 12.)  For example, a Starbucks charge of $3.83 was listed in the Wallet App as having been made on August 18, when in fact Gensmer made that purchase on August 19. (*Id.*, ¶ 13.)  Likewise, an Amazon charge of $14.99 was listed in the Wallet App as having been made on August 24, when in fact Gensmer made that purchase on August 25. (*Id.*, ¶¶ 14-15.)  The Complaint alleges that Capital One's "publication of false information regarding transactions and due dates through the Wallet App was a regular and uniform practice." (*Id.*, ¶ 16.)

Based on these factual allegations, Gensmer brings a putative class claim against Capital One for violation of TILA.  In her Complaint, Gensmer quotes portions of 15 U.S.C. § 1637(b), the TILA section requiring creditors with consumer accounts under an open end credit plan to transmit to the obligor periodic statements containing certain prescribed information. (*Id.*, ¶ 31.)  The Complaint frames Gensmer's TILA claim in the following terms: "Capital One has violated 15 U.S.C. § 1637(b), and Regulation Z § 1026.5(b) by failing to properly and accurately disclose to persons using its Wallet App the due dates of their payments and the dates of their transactions." (*Id.*, ¶ 32.)  Gensmer further pleads that this practice injured her in a concrete way because "the incorrect display of the payment due date by the Wallet App creates a real risk of harm … by lulling consumers into the belief that they had another day to pay before they would incur a late fee.  Also, the false information creates the impression that more time is allowed for avoiding a late fee than the contract actually provides." (*Id.*, ¶ 33.)  On the strength of these

---

not that late fees were charged at all, but instead "to the apparent posting of the late fee one day early." (*Id.*, ¶ 12.)  As the Court understands it, then, Gensmer's position is not that Capital One improperly assessed late fees on her accounts, but that the Wallet App inaccurately reflected those fees as accruing on August 24 when they actually accrued on August 25.

allegations, Gensmer seeks the following forms of relief: statutory damages pursuant to 15

U.S.C. § 1640(a)(2)(A), actual damages, and costs and attorney's fees. (*Id.* at 10.)

Capital One now seeks dismissal of the Complaint on multiple bases, two of which are of

particular significance. First, Capital One moves for dismissal pursuant to Rule 12(b)(1),

Fed.R.Civ.P., on the ground that Gensmer has failed to allege sufficient facts to show a concrete

and particularized injury, as necessary to establish Article III standing. Second, Capital One

moves for Rule 12(b)(6) dismissal, reasoning that Gensmer is ineligible for statutory damages

and has alleged no facts showing that she suffered actual damages as a result of the alleged TILA

violation. Each of these grounds for dismissal will be examined in turn.[2]

## II. Analysis.

### A. *Article III Standing.*

As an initial matter, Capital One moves for dismissal for lack of jurisdiction on the

ground that Gensmer cannot satisfy the requirements of Article III standing.[3] The three

irreducible elements of Article III standing are that a plaintiff must have "(1) suffered an injury

in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely

---

[2] At various junctures, Capital One also argues that it "is inaccurately named" and that the "proper corporate entity" that should be named as a defendant is "Capital One Bank (USA), N.A.," which was Gensmer's creditor, as opposed to the defendant named in the Complaint, "Capital One, N.A." (Doc. 8, at 1 n.1; *see also id.* at 6 n.4.) In its Reply, Capital One insists that "Plaintiff's failure to name the correct party, in and of itself, mandates dismissal." (Doc. 18, at 1 n.1.) To the extent defendant seeks dismissal on that basis, the Motion is **denied**. The Court has been presented with no facts and no evidence as to the actual name of the Capital One entity that was Gensmer's creditor. Plaintiff has not conceded the veracity of defense counsel's unsupported *ipse dixit*, but has simply allowed that "the Defendant may be improperly named." (Doc. 16, at 1 n.1.) On such a threadbare showing, dismissal for failure to name the correct Capital One corporate entity would be improper. It would also be a waste of judicial and litigant resources because Gensmer would presumably refile this action immediately, naming what defendant says is the correct entity.

[3] This portion of defendant's Motion to Dismiss is properly analyzed as a jurisdictional challenge asserted under Rule 12(b)(1), Fed.R.Civ.P. *See, e.g., Nicklaw v. Citimortgage, Inc.*, 839 F.3d 998, 1001 (11th Cir. 2016) ("Article III restricts the jurisdiction of the federal courts to litigants who have standing to sue."); *Stalley ex rel. U.S. v. Orlando Regional Healthcare System, Inc.*, 524 F.3d 1229 (11th Cir. 2008) ("Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1).") (citation omitted).

to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, --- U.S. ----, 136 S.Ct. 1540, 1547, 194 L.Ed.2d 635 (2016). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements," which at the pleading stage necessitates that the plaintiff "clearly … allege facts demonstrating each element." *Id.* (citations and internal quotation marks omitted).

Capital One's standing argument focuses on the "injury in fact" element. "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo*, 136 S.Ct. at 1548 (citation and internal quotation marks omitted); *see also Muransky v. Godiva Chocolatier, Inc.*, 905 F.3d 1200, 1207 (11th Cir. 2018) ("An injury in fact must be concrete, particularized, and actual or imminent."). "A concrete injury must be *de facto*; that is, it must actually exist." *Spokeo*, 136 S.Ct. at 1548 (internal quotation marks omitted). That said, the law is clear that "intangible injuries can nevertheless be concrete," and courts look to both history and the judgment of Congress to make a "concreteness" assessment in a particular case. *Id.* at 1549; *see also Nicklaw v. Citimortgage, Inc.*, 839 F.3d 998, 1002 (11th Cir. 2016) ("intangible injuries may satisfy the Article III requirement of concreteness") (citation omitted); *Muransky*, 905 F.3d at 1211 ("The inquiry under *Spokeo* is whether the alleged harm bears a 'close relationship' to one actionable at common law."). However, "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo*, 136 S.Ct. at 1549; *see also Hancock v. Urban Outfitters, Inc.*, 830 F.3d 511, 514 (D.C. Cir. 2016) (finding no concrete injury for Article III standing where plaintiffs complained that defendant violated D.C. statute by requesting their zip codes, inasmuch as plaintiffs did not plausibly allege "any concrete consequence" from the statutory violation, such as "invasion of privacy, increased risk of fraud or identity theft, or pecuniary or emotional injury").[4]

---

[4] The Eleventh Circuit recently had occasion to apply these principles in *Muransky v. Godiva Chocolatier, Inc.*, 905 F.3d 1200 (11th Cir. 2018), in which the plaintiff filed suit against a retailer for violating the Fair and Accurate Credit Transactions Act ("FACTA"), by including more than the last five digits of his credit card on his receipt at the point of sale. The *Muransky* court reasoned that the defendant's alleged FACTA violation was similar to the (Continued)

The key point is that, as a matter of settled law, a mere allegation that a defendant violated a legal obligation imposed by federal statute does not automatically give rise to Article III standing, in the absence of a showing of some harm or risk of harm to the plaintiff caused by that violation. *See Spokeo*, 136 S.Ct. at 1549 ("Article III standing requires a concrete injury even in the context of a statutory violation. For that reason, Robins could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III."); *Nicklaw*, 839 F.3d at 1003 ("[T]he requirement of concreteness under Article III is not satisfied every time a statute creates a legal obligation and grants a private right of action for its violation. … A plaintiff must suffer some harm or risk of harm from the statutory violation to invoke the jurisdiction of a federal court.") (citation omitted); *Strubel v. Comenity Bank*, 842 F.3d 181, 190 (2ⁿᵈ Cir. 2016) ("even where Congress has accorded procedural rights to protect a concrete interest, a plaintiff may fail to demonstrate concrete injury where violation of the procedure at issue presents no material risk of harm to that underlying interest").[5]

Again, Gensmer's Complaint alleges that Capital One violated TILA by "publish[ing] through its Wallet App materially false information regarding the dates of credit transactions and the dates on which late fees were incurred." (Doc. 1, at 1.) According to the Complaint, this violation was manifested through listed transaction dates that were one day earlier than the actual

---

common law tort of breach of confidence, and also resembled a modern version of a claim for breach of an implied bailment agreement, such that the violation caused the plaintiff to suffer an injury that "concrete in the sense that it involves a clear *de facto* injury, *i.e.*, the unlawful disclosure of legally protected information." *Muransky*, 905 F.3d at 1210 (citation omitted).

<sup>5</sup> There is an important distinction to be recognized here. As the foregoing authorities make clear, "a plaintiff cannot demonstrate that she has suffered a concrete injury by alleging a statutory violation alone." *Kelen v. Nordstrom, Inc.*, 259 F. Supp.3d 75, 79 (S.D.N.Y. 2016). It is equally true, however, that "some violations of statutorily mandated procedures may entail the concrete injury necessary for standing," which occurs "where Congress conferred the procedural right to protect a plaintiff's concrete interests and where the procedural violation presents a 'risk of real harm' to that concrete interest." *Strubel*, 842 F.3d at 189-90; *see also Kelen*, 259 F. Supp.3d at 79-80 ("A statutory violation can, by itself, constitute a concrete injury for the purposes of Article III standing where the plaintiff establishes that the violation resulted in a 'risk of real harm' to concrete interests of the plaintiff's that Congress, in enacting the statute, sought to protect.").

transactions (*i.e.*, a Starbucks purchase on August 19 was inaccurately reflected in the Wallet App as having occurred on August 18) and late fee charges listed as having been assessed one day earlier than they actually were (*i.e.*, a $25 late fee assessed on August 25 appeared incorrectly in the Wallet App as having been charged on August 24).

The critical concreteness inquiry is whether Gensmer has shown some real harm or risk of real harm to her by virtue of those inaccuracies. The Court answers this question in the negative. In her Complaint, Gensmer alleges that she has been injured by the complained-of practices "in a concrete way because the incorrect display of the payment due date by the Wallet App creates a real risk of harm in by [*sic*] lulling consumers into the belief that they had another day to pay before they would incur a late fee. Also, the false information creates the impression that more time is allowed for avoiding a late fee than the contract actually provides." (Doc. 1, ¶ 33.) These allegations do not satisfy the Article III concreteness requirement for two distinct reasons. First, the Complaint nowhere alleges an "incorrect display of the payment due date" in the Wallet App or anywhere else. Gensmer does not identify anything in the Wallet App display indicating that any future month's payment was due on any date other than the 25th of the month, which is the accurate date.[6] Even as to August 2017, the Complaint does not allege that Gensmer was ever confused, misled or uncertain of the actual payment due date at any time on or before August 25.

Second, to the extent that Gensmer suggests in her Complaint that she extrapolated (or could have extrapolated) from the line items in the Wallet App showing that a late fee was charged on August 24 to be "lulled" into thinking that she "had another day to pay" before a late fee would be charged, the contention does not make sense. The inaccurate dates reflected on the late fee entries could not logically have "lulled" her into thinking the payment due date was later

---

[6]     Additionally, Capital One has attached copies of plaintiff's electronic periodic account statements to its Motion to Dismiss. (Doc. 8, Exh. A.) Those documents are properly considered on Rule 12(b) review because they are central to Gensmer's claims and she has neither challenged their authenticity nor advanced any argument why they should not be considered at this time. *See generally Maxcess, Inc. v. Lucent Technologies, Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005) (on motion to dismiss, "a document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity"). Those periodic account statements conspicuously and unambiguously recite a payment due date of the 25th of the month for the next billing cycle.

than "the contract actually provides" because they reflected a late fee charge date earlier – not later – than the contractual payment due date.[7] So plaintiff's argument of a "lulling" risk of harm cannot withstand plausibility scrutiny.[8] Again, *Spokeo* teaches that a plaintiff "cannot satisfy the demands of Article III by alleging a bare procedural violation. … [N]ot all inaccuracies cause harm or present any material risk of harm." 136 S.Ct. at 1550. As pleaded, Gensmer's Complaint has done nothing more than allege bare procedural violations and inaccurate information, without establishing that such inaccuracies posed any material risk of harm to her.

In sum, Gensmer's efforts to satisfy the "concrete injury" requirement for Article III standing lack a sufficient basis in the well-pleaded factual allegations of the Complaint. Plaintiff argues that she faced a risk of harm because the Wallet App inaccurately displayed the payment due date; however, her pleading is devoid of any factual allegations that the Wallet App displayed an incorrect payment due date.[9] She maintains that the inaccurate date reflected in the Wallet App as to when late payment charges were assessed risked harm by lulling her into thinking that she had one more day than she actually did to avoid late fees; however, the

---

[7] Gensmer effectively concedes the point in her brief on the Rule 12(b) Motion, wherein she insists that the Wallet App's entry showing a late fee assessed on August 24 "created the false impression that a late fee had already been incurred when, in fact, there was one more day in which to pay without a late fee." (Doc. 16, at 11.) By plaintiff's own reckoning, then, the inaccurate entry could not have yielded the "lulling" phenomenon touted in her Complaint as the risk of harm (*i.e.*, falsely leading Gensmer to believe she had one more day to make a timely payment than she actually did) and could not have risked injuring her by misleading her into believing that she had more time to avoid a late fee than the contract allowed.

[8] In briefing the Rule 12(b) Motion, Gensmer reiterates her position that she suffered a concrete injury because "the information provided *to her* through the Wallet App was not accurate; and … this false credit information created confusion and the impression that more time is allowed for avoiding a late fee than the contract actually provided." (Doc. 16, at 8.) Even if Gensmer had construed the late payment charge date of August 24, 2017 as shown in the Wallet App as reflecting a due date of the 24th of the month (rather than the 25th, as the contract provided), that misunderstanding could not rationally have given rise to an impression "that more time is allowed for avoiding a late fee than the contract actually provided." Therefore, this circumstance cannot satisfy the concreteness requirement by constituting a "risk of real harm."

[9] To be clear, Gensmer's Complaint does not allege that Capital One failed to disclose to her (via the Wallet App and/or periodic electronic statements) that her payment due date was the 25th of each month.

inaccurate information she cites could not have had such an effect. Of course, the mere fact of a statutory violation does not, in and of itself, give rise to Article III standing or concrete injury.[10]

For all of the foregoing reasons, the Court finds that Gensmer has not adequately pleaded a concrete injury as necessary to satisfy the injury-in-fact element of Article III standing. Accordingly, the Motion to Dismiss is properly **granted** for lack of jurisdiction.

**B.    *Whether the Complaint Alleges a Viable Remedy under TILA.***

Even if Gensmer had pleaded sufficient facts to meet her burden of showing an injury in fact for standing purposes, her Complaint would nonetheless face dismissal under Rule 12(b)(6) for failure to state a claim.

Recall that Gensmer's theory of liability, as pleaded in the Complaint, is as follows: "Capital One has violated 15 U.S.C. § 1637(b), and Regulation Z § 1026.5(b) by failing to properly and accurately disclose to persons using its Wallet App the due dates of their payments and the dates of their transactions." (Doc. 1, ¶ 32.) The relief that Gensmer seeks in the Complaint for this purported TILA violation includes "[s]tatutory damages pursuant to 15 U.S.C. § 1640(a)(2)" and "[a]ctual damages." (Doc. 1, at 10.) In its Motion to Dismiss, Capital One argues that the Complaint lacks a sufficient factual predicate to support either actual or statutory damages, such that dismissal is warranted under Rule 12(b)(6). (Doc. 8, at 9 ("In the end, Plaintiff has not alleged any entitlement to relief under TILA. The Complaint fails to state a claim and should be dismissed.").)

TILA's remedial framework includes a provision stating that "any creditor who fails to comply with any requirement imposed under this part … with respect to any person is liable to such person in an amount equal to the sum of … any actual damage sustained by such person as a result of the failure." 15 U.S.C. § 1640(a)(1). Thus, TILA authorizes an award of actual damages for violation of the disclosure requirements of § 1637(b) that are at issue here. The trouble is that Gensmer's Complaint is devoid of well-pleaded factual allegations raising a plausible inference that she sustained any actual damage as a result of Capital One's alleged

---

[10]    *See, e.g., Kelen*, 259 F. Supp.3d at 80-81 (finding no concrete injury where plaintiff alleged TILA disclosure violations, but "does not claim that she changed her behavior in any way based on Nordstrom's allegedly insufficient disclosures," that "Nordstrom ever charged her either a late payment fee or a returned payment fee," or that "Nordstrom's allegedly faulty disclosure caused her to alter her behavior in any way").

violations. Gensmer does not allege that she was ever misled about the payment due date on her Capital One accounts, that she altered her behavior vis a vis the timing of her account payments in any way based on inaccurate information in the Wallet App, or that she was charged late fees that she would not otherwise have incurred but for the Wallet App's inaccurate information. Nowhere does Gensmer allege that she relied to her detriment on any incorrect transaction dates listed in the Wallet App, much less that she was damaged thereby.[11] These omissions (as to both reliance on inaccurate disclosures and actual damages caused by same) are fatal to her ability to proceed with her TILA claim on an "actual damages" theory. *See, e.g., Owner-Operator Independent Drivers Ass'n v. Landstar System, Inc.*, 622 F.3d 1307, 1326 (11th Cir. 2010) ("To recover actual damages [under § 1640(a) of TILA], consumers must show that they suffered a loss because they relied on an inaccurate or incomplete disclosure.") (citation omitted); *Turner v. Beneficial Corp.*, 242 F.3d 1023, 1028 (11th Cir. 2001) ("[w]e hold that detrimental reliance is an element of a TILA claim for actual damages").[12]

In briefing the Motion to Dismiss, plaintiff offers no rebuttal to Capital One's arguments concerning the inadequacy of her pleading to support a viable "actual damage" claim under TILA. Instead, she cites authority touting the availability of statutory damages in TILA actions, even where no actual damage is incurred. *See, e.g., Reed v. Chase Home Finance, LLC*, 893 F. Supp.2d 1250, 1253 (S.D. Ala. 2012) ("A violation of Section 1641(g) enables a plaintiff to

---

[11]     Indeed, the factual allegations in the Complaint dispel any inference that Gensmer altered her payment behavior on the Capital One accounts based on inaccurate information in the Wallet App. Specifically, plaintiff's pleading alleges that she first became aware of the August 24 late fee posting in the Wallet App "[o]n or about August 26th," which was <u>after</u> her August 25 payment due date and <u>after</u> she initiated payments to those accounts. (Doc. 1, ¶ 11.) Based on this sequence of events, Gensmer could not have detrimentally relied on the Wallet App "late fee" date or sustained actual damage thereby because, by her own admission, she learned of the inaccurate information after her payment deadline had expired and after she had already made whatever payment arrangements she wished for the August 2017 billing cycle.

[12]     Additionally, although Gensmer has not contended otherwise, a TILA plaintiff cannot show "actual damage" under the statute by merely claiming attorney's fees for litigating the TILA claim. *See, e.g., Bradford v. HSBC Mortg. Corp.*, 280 F.R.D. 257, 261 (E.D. Va. 2012) ("Congress made unmistakably clear its intent to distinguish sharply between 'actual damage' under TILA and 'a reasonable attorney's fee' recoverable under TILA. Put simply, they are separate and distinct categories; attorney's fees that a TILA claimant incurs advancing his TILA action are not 'actual damage' under TILA.").

recover both actual damages and statutory damages, and the latter are recoverable even in the complete absence of the former.") (citation omitted); *Brown v. CitiMortgage, Inc.*, 817 F. Supp.2d 1328, 1331 (S.D. Ala. 2011) ("The right of a TILA plaintiff to recover statutory damages, irrespective of the presence or absence of actual damages, is firmly entrenched in the case law.") (citations omitted); *Williams v. Countrywide Home Loans, Inc.*, 504 F. Supp.2d 176, 185-86 (S.D. Tex. 2007) ("TILA plaintiffs need not show that they sustained actual damages stemming from the TILA violations proved before they may recover the statutory damages the Act also provides for.") (citation and internal quotation marks omitted).  As defendant points out, however, statutory damages are not available for <u>every</u> TILA violation; rather, there are exclusions.[13]  Therefore, we must look to the text of the statute to ascertain whether statutory damages are available for the particular disclosure violation alleged in Gensmer's Complaint.

Pursuant to 15 U.S.C. § 1640(a)(2)(A), TILA authorizes an award of statutory damages of $500 or more for an individual action relating to an open end consumer credit plan that is not secured by real property or a dwelling.  However, § 1640(a) also provides as follows: "In connection with the disclosures referred to in subsections (a) and (b) of section 1637 of this title,

---

[13]      *See, e.g., United States v. Petroff-Kline*, 557 F.3d 285, 296 (6th Cir. 2009) (under TILA, "timing violations alone do not qualify for statutory damages"); *In re Ferrell*, 539 F.3d 1186, 1191 (9th Cir. 2008) ("We hold that a consumer may not recover statutory damages under § 1640(a) for violations of § 1638(b)(1) and its corresponding regulations."); *Brown v. Payday Check Advance, Inc.*, 202 F.3d 987, 992 (7th Cir. 2000) ("We hold that § 1640(a) means what it says, that 'only' violations of the subsections specifically enumerated in that clause support statutory damages …."); *Rubinstein v. Department Stores Nat'l Bank*, 955 F. Supp.2d 260, 262 (S.D.N.Y. 2013) ("TILA only provides statutory damages for violations of certain specifically enumerated provisions."); *Guillaume v. Federal Nat'l Mortg. Ass'n*, 928 F. Supp.2d 1337, 1341 (S.D. Fla. 2013) ("While Congress included statutory damages … as incentives for lawyers to bring claims under TILA, where such claims exceed the scope of Congress's intent, the Court may deny relief."); *Schwartz v. Comenity Capital Bank*, 2015 WL 410321, *3 (S.D.N.Y. Feb. 2, 2015) ("Statutory damages are not available for violations of TILA's disclosure requirements unless they are specifically enumerated in § 1640(a)."); *Kauinui v. Citibank (South Dakota), N.A.*, 2009 WL 3530373, *8 (D. Haw. Oct. 28, 2009) ("Upon examination of TILA …, the Court holds that Plaintiff cannot recover statutory damages for Defendant's alleged disclosure violations."); *Mize v. Joe's Auto Sales, Inc.*, 2005 WL 280343, *4 (S.D. Ind. Jan. 26, 2005) ("statutory damages are not available for every violation of TILA"); *Stevens v. Brookdale Dodge, Inc.*, 2002 WL 31941158, *5 (D. Minn. Dec. 27, 2002) ("Because Plaintiffs concede that they have not suffered any actual damages as a result of Defendant's alleged violation of section 1638(b)(1), and because Plaintiffs cannot recover statutory damages for such a violation, the Court grants Defendant's Motion for Summary Judgment ….").

a creditor shall have a liability determined under paragraph (2) only for failing to comply with the requirements of … any of paragraphs (4) through (13) of section 1637(b) of this title." 15 U.S.C. § 1640(a). Gensmer's Complaint unambiguously frames her TILA claim in terms of an alleged violation of 15 U.S.C. § 1637(b). (Doc. 1, ¶ 32.) By the plain language of § 1640(a) as quoted above, statutory damages are not recoverable for all violations of § 1637(b), but only for violations of subparagraphs (4) through (13). Gensmer's allegations that the Wallet App set forth incorrect dates of transactions on her Capital One accounts implicate only subparagraph (2). That subparagraph requires a creditor of an account under an open end consumer credit plan to transmit to the obligor a monthly statement setting forth "[t]he amount and date of each extension of credit during the period, and a brief identification … sufficient to enable the obligor either to identify the transaction or to relate it to copies of sales vouchers." 15 U.S.C. § 1637(b)(2). Pursuant to § 1640(a), statutory damages are not available for violations of the disclosure requirements set forth in § 1640(b)(2), as to dates of transactions. As such, Gensmer cannot recover statutory damages on the TILA claim asserted in her Complaint. She does not argue the point in her memorandum of law in response to the Motion to Dismiss.[14]

---

[14] To be sure, statutory damages are available under § 1640(a) for violations of the § 1637(b) disclosure requirement specified in subparagraph (12), which requires that periodic statements for credit cards under an open end consumer credit plan must include "in a conspicuous location on the billing statement, the date on which the payment is due." 15 U.S.C. § 1637(b)(12)(A). However, Gensmer's Complaint does not allege a violation of subparagraph (12). She does not suggest that Capital One failed to make that disclosure, much less present any facts to support such a conclusion. Indeed, Gensmer admits that "Capital One provides periodic statements as required by TILA," separate and apart from the Wallet App. (Doc. 16, at 2.) Plaintiff never claims that those periodic statements lacked conspicuous disclosures of payment due dates as required by subparagraph (12). Insofar as Gensmer might have intended to argue that the August 24 transaction date for her late fees listed in the Wallet App gives rise to confusion as to the payment due date so as to render Capital One noncompliant with subparagraph (12), and thereby unlock statutory damages, the Court finds the logical leap between the facts as pleaded in the Complaint and such a theory of liability to be too great to support a cognizable claim for relief. The Complaint lacks any facts alleging that Capital One's periodic statements failed to recite accurately the payment due date in a conspicuous location, which is what subparagraph (12) requires. At any rate, Gensmer never actually articulated any such argument, but instead left it to the Court and the defendant to guess as to why and how she believed statutory damages might be available here. Again, Gensmer has not addressed – much less rebutted – Capital One's arguments about the nonavailability of statutory damages for the specific violations pleaded in the Complaint. This Court cannot and will not articulate and litigate Gensmer's unspoken arguments for her.

With no viable claim for actual or statutory damages pleaded in her Complaint, Gensmer has failed to state a TILA cause of action upon which relief may be granted.  A plaintiff who has pleaded facts showing neither the existence of actual damages nor the availability of statutory damages has not stated a claim under TILA.  Plaintiff does not argue otherwise.

**III.     Conclusion.**

For all of the foregoing reasons, Defendant's Motion to Dismiss (doc. 8) is **granted**.  As pleaded, plaintiff's Complaint adequately shows neither Article III standing nor the availability of actual or statutory damages that might give rise to a cognizable TILA claim.  Accordingly, this action is **dismissed without prejudice** pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.


DONE and ORDERED this 17th day of December, 2018.


s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE