# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| MICHELLE GENSMER, on behalf of Herself and all others similarly situated | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:18-CV-00361-WS-M |
| v. | ) ) ) | |
| Capital One Bank (USA), N.A., | ) ) | |
| Defendant. | ) | |

## FIRST AMENDED COMPLAINT

## PRELIMINARY STATEMENT

This action arises from Capital One Bank (USA), N.A.'s ("Capital One") publication of materially false information to card holders through its Wallet App. During the class period the information displayed by the App contradicted information contained in class members' credit card statements. Capital One encouraged its credit card holders to forego receipt of paper statements in favor of obtaining account transaction information electronically, including using Capital One's mobile phone applications. At the same time, Capital One published through its Wallet App materially false information regarding the dates of credit transactions and the dates on which late fees were incurred. Capital One is required under the Truth-in-Lending Act, 15 U.S.C. § 1601, et seq., ("TILA") to disclose accurate credit information, including transaction dates and the date on which a late fee will be incurred. The publication of false information through the Wallet App violates rights granted under TILA because it contradicts the information in the periodic statements of Plaintiff and putative class members. Plaintiff seeks relief for herself and on behalf of a class of similarly situated consumers.

## JURISDICTION AND VENUE

1. This action includes claims which arise under the statutes of the United States, including the Truth-in-Lending Act, 15 U.S.C. § 1601, et seq., ("TILA"), and this Court's jurisdiction is conferred by 28 U.S.C. § 1331.

2. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Capital One regularly conducts business within this District and the events complained of occurred in this District.

## PARTIES

3. Plaintiff Michelle Gensmer is a resident of Baldwin County, Alabama.

4. Capital One Bank (USA), N.A., ("Capital One") is a national banking association, organized and existing under the laws of the State of Virginia and is registered and authorized to do business in the State of Alabama.

5. In addition to her individual claim, Plaintiff asserts a claim pursuant to Rule 23, *Federal Rules of Civil Procedure* on behalf of all others similarly situated throughout the United States for damages and other relief for violation of Truth-in-Lending Act, 15 U.S.C. § 1601, et seq., ("TILA"). Capital One had a routine practice of providing, through its cellular telephone application, contradictory and false information regarding the dates of credit card transactions, payment due dates and dates on which late fees were incurred. This conduct violates the TILA which requires such disclosures to be clear and conspicuous.

## FACTUAL ALLEGATIONS

6. Part of Capital One's business is the issuance of consumer credit cards. According to its parent company's 2017 Securities and Exchange Commission ("SEC") filing, Capital One

is, "the third largest issuer of Visa® ("Visa") and MasterCard® ("MasterCard") credit cards in the U.S. based on the outstanding balance of credit card loans as of December 31, 2017."

7. During all relevant times, Capital One published and promoted to its cardholders a cellular telephone application known as the "Capital One Wallet App" ("Wallet App" or "the App"). Capital One encouraged its cardholders to use its Wallet App to obtain account information and to manage their accounts. The Wallet App allowed customers to review purchases, check their balance and make payments, among other things. Capital One encouraged its customers to use electronic means, including the Wallet App as an alternative to paper statements which saves Capital One money and increases its profits.

8. Plaintiff has two Capital One credit card accounts, one ending with "4429" and a second account ending with "3255". Each of these accounts is an "open end credit plan" as that term is used by TILA and its implementing regulations, 12 C.F.R. § 1026 ("Regulation Z").

9. In response to Capital One's promotion of the Wallet App, Plaintiff began using it to manage her accounts. She, like many people, opted out of receiving paper statements in favor of managing her account through the Wallet App.

10. Plaintiff initiated on-time payments on her accounts through her bank in August 2017. On or about August 26, 2017 she used the Wallet App to access her accounts and confirm the posting of her payment and review the status of her account. She was surprised to see that both her accounts had been accessed a $25.00 late fee. According to the Wallet App, the fee was accessed on August 24, 2017.

11. Plaintiff assumed, based on the dates displayed by the Wallet App, that she was charged the late fees a day before her payments were due.[1]

12. Plaintiff, a person who does not make a habit of paying her bills late, was upset (suffered mental anguish) about the apparent early charging of the late fees and took the time to write Capital One a letter On September 18, 2017, complaining about the fees.

13. She also spoke to someone from Capital One on or about September 26, 2017. During this conversation she explained to the representative what had happened. The Capital One representative said she would investigate the matter and call Gensmer back.

14. Capital One called Gensmer on October 12, 2017 and told her that the inaccurate posting of date the late fees was caused by the use of an old version of the App. Gensmer explained that her App was up to date and was the latest version. The Capital One representative said she would have someone call Gensmer back.

15. Gensmer received another call from Capital One on October 23, 2017. During this call the representative claimed that the App reflected that the late charges were displayed by the App occurring on the 24th because Gensmer was in the Central Time zone and that the fees were accessed in the Eastern Time zone.

16. Finally, on or about November 21, 2017, Capital one sent Gensmer a letter confessing that "due to a technical problem with the Capital One Wallet App" that the date that the late fees were charged was inaccurate.

---

[1] Plaintiff eventually determined that, although she initiated on-time payments, her bank took longer than usual to make the payments to Capital One resulting in the late fees. She could have learned this sooner if Capital One had admitted that the App was faulty initially.

17. In addition to the apparent charging of the late fee one day early, Plaintiff discovered that the dates of purchases and other transactions were inaccurate – indicating that they had occurred one day earlier than the actual transactions.

18. For example, as shown below, the Wallet App indicated that indicated that the late charge was accessed to account 3255 on August 24th and that Starbucks charge was made on August 18th when both these charges were incurred a day later.

**Thursday, August 24**

**PAST DUE FEE**      $25.00

**Friday, August 18**

**Starbucks Coffee**      $3.83

19. Likewise, Plaintiff's account number 4429, was also incorrectly displayed by the App as follows:

**Thursday, August 24**

**Amazon**      $14.99

**PAST DUE FEE**      $25.00

20. Each of these transactions took place on August 25, 2017 according to Capital One's statements attached hereto as Exhibits One and Two.

21. Plaintiff's credit card payments are due on the 25th of each month. If a payment is not made on or before that date Capital One, according to the terms of the Parties' Agreement, may assess a late fee.

22. At all relevant times, however, the Wallet App displayed incorrect dates that contradicted the dates on Plaintiff's and class members' statements.

23. Plaintiff and class members are entitled to accurate information regarding their credit card accounts.

24. Plaintiff was caused inconvenience and wasted time because of the display of the incorrect dates by having to investigate why she was apparently charged a late fee a day before her payment was due.

25. In addition, she spent money for postage related to her correspondence with Capital One.

26. Plaintiff also used her cellular telephone time during conversations with Capital One. She incurred expenses for the use of the cellular telephone time.

27. If Capital One had explained that "due to a technical problem with the Capital One Wallet App," incorrect dates were being displayed initially instead of making up the excuses listed above, Plaintiff could have determined why the late fees were incurred sooner.

28. TILA, specifically Section 1637(b)(9) requires credit card statements to disclose the date by which a payment must be made in order to avoid additional finance charges.

29. In addition, Section 1637(b)(12) requires credit card statements to disclose, in a conspicuous location, the date by which a payment is due, or if different, the date on which a late fee will be charged.

30. The inaccurate dates displayed by the App has caused Plaintiff and putative class members confusion by contradicting the information required by TILA, Sections 1637(b)(9) and 1637(b)(12).

31. The publication of contradictory and false information regarding transactions and due dates through the Wallet App was a regular and uniform practice.

32. Plaintiff seeks relief on behalf of a class of similarly situated credit card holders. Federal law, including TILA, requires that creditors on open-ended accounts accurately disclose key information regarding credit transactions, including the dates on which payments are due and dates on which late fees may be assessed. As alleged below, the failure to display accurate information through the Wallet App constitutes a violation of TILA for each inaccurate publication.

33. Failing to provide accurate information through the Wallet App regarding transaction dates, due dates and late fee dates, particularly when the creditor is simultaneously encouraging borrowers to forego paper statements, deprives consumers of their statutory right to receive accurate information about key aspects of their credit terms.

34. Through TILA, Congress conferred to consumers a concrete and legally protected interest in the receipt of accurate information regarding terms of credit including the dates on which credit is extended, payment due dates and the dates late fees are incurred. Moreover, Congress conferred to consumers the right to bring a civil action to address a creditor's failure to comply with the TILA disclosure requirements.

35. Capital One's publication of materially false and contradictory information through its Wallet App constitutes an invasion of the legally protected interest created through TILA. That invasion is concrete and particularized, actual or imminent and not conjectural or hypothetical. The publication of false information regarding transaction dates and dates on which late fees were incurred deprives consumers of their legally protected interest in the informed use of credit. Such false information creates a real risk of harm by creating false impressions as to when credit was incurred and the last day for payment without a late fee.

36. Capital One's failure to disclose accurate account information and publication of materially false information invaded the statutorily created rights of Plaintiff and the putative class to receive accurate credit information. Plaintiff and the putative class members have suffered a legally cognizable injury resulting from Capital One's failure to comply with TILA as alleged herein.

## CLASS ACTION ALLEGATIONS

37. Plaintiff brings this action on behalf of herself and a class of other individuals similarly situated.

38. The class is defined as:

All credit card account obligors of Capital One who, from the beginning of period starting one year from the date of the filing of the original Complaint herein until a class is certified, received through the Wallet App, inaccurate information regarding their transaction dates, due dates and/or dates on which late fees had been incurred.

39. The following people are excluded from the class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Capital One, its subsidiaries, parents, successors, predecessors, and any entity in which Capital One or its parents have a controlling interest and its current or former employees, officers, and directors; (3) persons who properly

execute and file a timely request for exclusion from the Class; (4) the legal representatives, successors, or assignments of any such excluded persons; and (5) Plaintiff's counsel and Capital One's counsel.

40. Numerosity: The members of the class are so numerous that joiner for all members individually is impracticable. The exact number of the class members can be determined only by appropriate discovery from Capital One. Plaintiff believes, however, that the class exceeds 1,000,000 persons.

41. Commonality and Predominance: There are many questions of law and fact common to the claims of Plaintiff and the class. Those questions predominate over any questions that may affect individual members of the class. Common questions for the class include, but are not limited to, the following:

- Does Capital One's conduct violate TILA;
- Was the conduct of Capital One and/or its agents willful;
- Are Plaintiff and class members entitled to actual and statutory damages based on Capital One's conduct.

42. Typicality: Plaintiff's claims are typical of the claims of other members of the class in that Plaintiff and the members of the class had a statutory right to receive accurate information about their accounts and sustained damages arising out of Capital One's uniform conduct.

43. Adequate Representation: Plaintiff will fairly and adequately represent and protect the interest of the class and has retained counsel competent and experienced in Class Actions. Plaintiff has no interest antagonistic to those of the class and Capital One has no defenses unique to Plaintiff.

44. Policies Generally Applicable to the Class: This Class Action is appropriate for certification because Capital One has acted, or failed to act, on grounds generally applicable to the class as a whole, thereby allowing the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the class and making final relief appropriate with respect to the class as a whole. Capital One's practices apply to and affect the members of the class uniformly, and Plaintiff's challenge of those practices hinges on Capital One's conduct with respect to the class as a whole, not on facts or law applicable only to Plaintiff.

45. Superiority: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy and because joinder of all parties is impracticable. The damages suffered by the individual members of the class will likely be relatively small. Thus, it would be virtually impossible for the individual members of the class to obtain effective relief from Capital One's misconduct. Even if members of the class could sustain such individual litigation, it would still not be preferable to a Class Action because individual litigation would increase the delay and expense for all parties. By contrast, a Class Action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale and comprehensive supervision by a single court.

## COUNT ONE
## FEDERAL TRUTH IN LENDING ACT

46. Plaintiff and the other members of the class adopt and re-allege above paragraphs of this Complaint.

47. TILA requires creditors with consumer accounts under an open-end credit plan to send the obligator a statement for each billing cycle. The statements must contain at least the following information:

**(b) Statement required with each billing cycle.** The creditor of any account under an open end consumer credit plan shall transmit to the obligor, for each billing cycle at the end of which there is an outstanding balance in that account or with respect to which a finance charge is imposed, a statement setting forth each of the following items to the extent applicable:

**(1)** The outstanding balance in the account at the beginning of the statement period.

**(2)** The amount and date of each extension of credit during the period, and a brief identification, on or accompanying the statement of each extension of credit in a form prescribed by the Bureau sufficient to enable the obligor either to identify the transaction or to relate it to copies of sales vouchers or similar instruments previously furnished, …

**(3)** The total amount credited to the account during the period.

**(4)** The amount of any finance charge added to the account during the period, itemized to show the amounts, if any, due to the application of percentage rates and the amount, if any, imposed as a minimum or fixed charge….

**(8)** The outstanding balance in the account at the end of the period.

**(9)** The date by which or the period (if any) within which, payment must be made to avoid additional finance charges…

**(12)(A) Late payment deadline required to be disclosed. —**
In the case of a credit card account under an open end consumer credit plan under which a late fee or charge may be imposed due to the failure of the obligor to make payment on or before the due date for such payment, the periodic statement required under subsection (b) with respect to the account shall include, in a conspicuous location on the billing statement, the date on which the payment is due or, if different, the date on which a late payment fee will be charged, together with the amount of the fee or charge to be imposed if payment is made after that date…

15 U.S.C. § 1637(b).

48. Regulation Z at § 1026.5(a)(1) requires these disclosures to be clear and conspicuous.

49. Capital One has violated 15 U.S.C. § 1637(b)(9), § 1637(b)(12) and Regulation Z § 1026.5 by publishing information through the Wallet App that contradicts the information on its

credit card statements. This constitutes a failure to clearly and conspicuously make the disclosures required by 15 U.S.C. § 1637(b).

WHEREFORE, the premises considered, Plaintiff prays that this Court grant Plaintiff and the class the following relief:

(a) An Order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class and any Subclasses the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers representing Plaintiff as counsel for the Class;

(b) Statutory damages pursuant to 15 U.S.C. §1640(a)(2);

(c) Actual damages;

(d) Litigation costs and attorneys' fees; and

(e) Any other relief as may be just and proper.

## DEMAND FOR JURY TRIAL

The plaintiff individually and on behalf of the class demands a trial by jury of all issues triable before a jury.

_____.
EARL P. UNDERWOOD, JR
KENNETH J. RIEMER
Underwood & Riemer, P.C.
21 South Section Street
Fairhope, AL 36532
251-990-5558 (telephone)
251-990-0626 (facsimile)
epunderwood@alalaw.com
kjr@alaconsumerlaw.com